UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANTONIO DAVIS,

    Petitioner,    Case Number: 5:11-CV-10990

v.    HON. JOHN CORBETT O'MEARA

CINDI CURTIN,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Michael Antonio Davis, a state inmate currently incarcerated at the Oaks Correctional Facility in Manistee, Michigan, filed a *pro se* petition for writ of habeas corpus challenging his convictions for first-degree murder, mutilation of a dead body, felon in possession of a firearm, and felony firearm. He seeks habeas relief on the grounds that the prosecutor's misconduct deprived him of a fair trial and the evidence presented was insufficient to prove him guilty of first-degree murder and dismemberment of a body. Respondent filed an answer arguing the claims are procedurally defaulted and/or meritless. For the reasons set forth, the Court denies the petition.

### I. Background

### A. Facts

Petitioner's convictions arise from the murder of John Anderson in Detroit.

Detroit police officer Garnett Hatchett testified that, on June 27, 2007, he and his partner James Forrest responded to a report of a body found at 6082 Barrett Street. Officer Hatchett testified that when he searched the home he found a body at the bottom of the basement stairs. The victim's hands were partially severed, part of the victim's face was missing, and the victim's arms, legs, and torso had cuts on them. A circular saw was next to the victim's head.

Police officer Laura Zielinski testified that she was also dispatched to the Barrett Street home on June 27, 2007. She testified that she observed the victim's body in the basement and that both of his arms had been severed. She also testified that he had gunshot wounds to his chest.

John Scott Somerset, an assistant Wayne County medical examiner, testified that he performed an autopsy on John Anderson. Anderson died from multiple gunshot wounds. Dr. Somerset testified that there were marks on Anderson's body consistent with a circular saw. He observed at least five saw-inflicted wounds on Anderson's head, three of which cut through the bone and reached the brain.

Walter Simpson testified that he lived in the upstairs portion of the home at 6082 Barrett Street. He shared the home with Petitioner. On June 26, 2007, Simpson saw Petitioner and a neighbor (Petitioner's co-defendant), known to Simpson as Reese, threatening Anderson with guns. Anderson fled the home. Petitioner sent Simpson to retrieve Anderson. Anderson told Simpson that Petitioner was angry because Anderson owed Petitioner $600. A few minutes after Anderson returned to the home, Simpson saw

Anderson on his knees praying to God. Petitioner and Reese both stood before Anderson with guns pointed at him. Both Petitioner and Reese shot Anderson. After he was shot, Anderson jumped up and ran to the bathroom, shutting the door behind him. Simpson followed Anderson and found him dead on the bathroom floor. Petitioner ordered Simpson to bring Anderson into the dining room. Simpson did so. Simpson tried to leave the home, but Petitioner forbade him from doing so. He ordered Anderson to take the body to the basement. After complying, Simpson again sought permission to leave the home. Petitioner denied him permission, instead handing Simpson a circular saw and ordering him to cut up the body. Petitioner and Reese stood at the top of the basement stairs, with their guns, and watched Simpson. After working on the body for approximately ten minutes, Simpson was permitted to leave. Simpson testified that he followed Petitioner's instructions because he feared that if he did not Petitioner would shoot him, as Petitioner had done twice previously. The day after the murder, at the behest of a pastor in whom he had confided, Simpson contacted police to tell them about the murder.

## B.  Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of first-degree murder, mutilation of a dead body, possession of a firearm during the commission of a felony, and felon in possession of a firearm. On April 17, 2008, he was sentenced as a fourth habitual offender to life in prison without parole for the first-degree murder conviction, five to ten years in prison for the mutilation of a dead body conviction, two

years in prison for the felony-firearm conviction, and two to five years in prison for the felon in possession of a firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

> I. Prosecutorial misconduct during both the opening and closing argument denied the defendant his due process rights to a fair trial, requiring reversal of his convictions.
>
> II. The great weight of the evidence presented by the prosecutor was insufficient to establish beyond a reasonable doubt that the defendant, Michael Davis, was guilty of first-degree murder and disinterment of a body.

The Michigan Court of Appeals affirmed the convictions. *People v. Davis*, No. 285473, 2010 WL 99005 (Mich. Ct. App. Jan. 12, 2010). The Michigan Supreme Court denied leave to appeal. *People v. Davis*, 486 Mich. 930 (Mich. May 25, 2010).

Petitioner then filed this habeas corpus petition. He raises the same claims raised in state court.

## II. Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an

>unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131

S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Analysis

#### A.  Prosecutorial Misconduct Claim

Petitioner argues that the prosecutor's misconduct violated his right to a fair trial. Specifically, he argues that the prosecutor argued facts not in evidence, improperly vouched for a witness, and improperly appealed to the jury's sympathies. Respondent maintains that the prosecutorial misconduct claim is procedurally defaulted.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

"Michigan's contemporaneous-objection rule requires that defendants make timely and specific objections at trial in order to preserve claims for appellate review." *Wallace*

*v. Ludwick*, No. 08-11747, 2009 WL 2840500, at *3 (E.D. Mich. 2009) (citing *People v. Carines*, 597 N.W.2d 130, 137-42 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994)).  In this case, the Michigan Court of Appeals reviewed this claim only for plain error because defense counsel did not timely object. *People v. Pipes*, 715 N.W.2d 290, 296-297 (2006) ("In order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error.") (quotation omitted).  The contemporaneous-objection rule, an adequate and independent state procedural rule, was relied upon by the state court in this case, which also conducted plain error review of the claim.  A state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).  Petitioner fails to assert cause to excuse his default.  Therefore, this claim is therefore procedurally defaulted unless Petitioner demonstrates "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

      The Supreme Court explicitly ties the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Id.* at 324.  "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation

omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." Id. at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (quoting *Schlup*, 513 U.S. at 329). Petitioner fails to present any new, reliable evidence in support of his habeas petition and does not assert a claim of actual innocence. Therefore, Petitioner's prosecutorial misconduct claim is procedurally barred.

## B. Sufficiency of the Evidence Claim

Next, Petitioner claims that the prosecutor presented insufficient evidence to show that he was guilty of first-degree murder and mutilation of a dead body.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

9

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998).

Michigan Compiled Law § 750.160 provides it is a felony to "mutilate, deface, remove, or carry away a portion of the dead body of a person" whenever such action is not necessary to embalming or performing a post-mortem examination. "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the

10

crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 597 N.W.2d 130, 135 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

   The Michigan Court of Appeals held that the prosecution presented sufficient evidence to prove beyond a reasonable doubt that Petitioner committed first-degree murder. The Michigan Court of Appeals reasoned that Simpson's testimony that Petitioner and Anderson had a disagreement regarding a truck that Petitioner purchased from Anderson, provided evidence of a motive, from which a jury could infer premeditation. Anderson fled the home after Petitioner pointed a gun at him. According to Simpson's testimony, Petitioner instructed Simpson to retrieve Anderson. Anderson was on his knees, pleading for his life when he was shot. The Michigan Court of Appeals held that this testimony shows that Petitioner had ample time to reflect before he fired his weapon. *Davis*, 2010 WL 99005, at * 4. Further, the Michigan Court of Appeals held that the high caliber of weapon used and the location of the wounds also supported a finding of premeditation. *Id.* Finally, the state court held that the jury could reasonably infer premeditation based upon Petitioner's actions after the murder, ordering Simpson to

dismember the body with a circular saw, hide it in the basement, and then possibly burn down the house to destroy the evidence. *Id.* The Michigan Court of Appeals recognized that Simpson's credibility was central to establishing the premeditation element. The physical evidence corroborated Simpson's story and, the Court of Appeals concluded, it was within the province of the jury to assess Simpson's credibility.

The Michigan Court of Appeals further held that sufficient evidence was admitted to convict Petitioner of mutilating a dead body, under an aiding and abetting theory. First, undisputed evidence from the police and medical examiner showed the Anderson's body sustained several cuts to the head, abdomen, shoulder, both arms, both legs, and right hand. Second, Simpson testified that Petitioner told him he could not leave and instructed him to drag the body to the basement. After Simpson had done so, Petitioner again told him he could not leave. Petitioner handed Simpson a circular saw and, while holding a gun, told Simpson to cut up the body. Simpson testified that he feared Petitioner would shoot him if he did not do as ordered. He testified that Petitioner had shot him twice previously. Petitioner remained at the top of the basement stairs while Simpson cut up the body.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434. According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty did not "result[] in a decision that . . . involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and declines to issue a certificate of appealability.

### V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that the Court declines to issue a certificate of

appealability.

                                          s/John Corbett O'Meara
                                          United States District Judge

Date:  April 4, 2012


      I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 4, 2012, using the ECF system and/or ordinary mail.

                                          s/William Barkholz
                                          Case Manager